(24 Misc. Rep. 442.)

PEOPLE ex rel. PIERCE v. PARKHURST et al.

(Supreme Court, Special Term, Oswego County. August 3, 1898.)

1. ELECTIONS—BALLOTS—VALIDITY—IDENTIFICATION MARKS.
A ballot which, in addition to a cross mark in the voting space opposite the name of a candidate, has a black pencil mark in the space occupied by the candidate's name, on the right side thereof, is invalid under Election Law, § 105, as bearing an identification mark.

2. SAME,—ERASURES—CANCELLATIONS—OBLITERATIONS.
Ballots showing erasures, cancellations, or obliterations of whatsoever character, made by the voter in his efforts to correct mistakes, are void, under Election Law, § 105, providing that it shall be unlawful to erase any marks on a ballot.

3. SAME—USE OF BLACK PENCIL.
An objection that a cross mark within the voting circle was not made with a black lead pencil will be disregarded where a microscopic examination shows that it was made with a black lead pencil having a dull point.

4. SAME—CROSS MARK—SUFFICIENCY.
An objection that the lines in a voting space do not cross will be overruled where an examination with the aid of a microscope shows an actual crossing.

5. SAME—IDENTIFICATION MARKS.
A little, dot-like mark close to the end of one of the lines of the cross, evidently made by accident while making the cross mark, is too trivial a distinguishing mark to invalidate a ballot.

6. SAME—CROSS MARK—FORM—SUFFICIENCY.
A ballot is not void because the cross mark in the party circle has a short third line running parallel with one of the projecting ends of one of the cross lines, and in the voting space opposite the name of a candidate of the same political party the cross mark is not complete, being made of one straight line joined by a second line at right angles.

7 SAME.
The fact that the cross in the party circle on a ballot is made of three lines instead of two will not invalidate the ballot.

8. SAME—IDENTIFICATION MARKS—PUNCTURES.
Very small punctures, accidentally made by the point of a sharp lead pencil while making the cross marks, are too trivial as distinguishing marks to invalidate a ballot.

9. SAME—INCOMPLETE CROSS MARK.
A ballot is not vitiated by the fact that, while there is a proper cross in the party circle, yet a straight diagonal line appears in the space opposite the name of a candidate, where it is apparent that the straight line was part of cross which the voter forgot to complete.

10. SAME—VOTING FOR OPPOSING CANDIDATES—EFFECT.
The entire ballot is not rendered invalid by the fact that the voter placed crosses opposite the names of opposing candidates for the same office, under Election Law, § 110, subd. 2.

11. SAME—DOUBLE CROSS MARKS.
A ballot is not void because a voter has placed two crosses in the space opposite the name of one of the candidates.

12. SAME—IDENTIFICATION MARKS.
A diagonal black line in one of the spaces for writing the name of a candidate will vitiate a ballot as having been made with deliberation for the purpose of identification.

13. SAME—CROSS MARK—SUFFICIENCY.
    A ballot is not invalid because the lines cross in the outside ink border surrounding the voting space.

14. SAME—ERASURES.
    A ballot will be vitiated by the act of a voter in partially erasing a line in the space occupied by a candidate's name, cutting the line in two.

15. SAME—CROSS MARKS—PLACE—SUFFICIENCY.
    A ballot is not invalid where a cross mark opposite the name of a candidate is made by two diagonal lines which join at the top, forming an acute angle, and both are crossed by a line nearly horizontal, and, while one of the diagonal lines is wholly within the space occupied by the name of a candidate, the other lines are partly within the voting space and partly in the space occupied by the name, and the lines cross exactly on the printed line separating the spaces.

16. SAME.
    A ballot may not be counted for a candidate where the cross mark is wholly outside the voting space opposite his name.

Application of the people, on the relation of Ward E. Pierce, against Burns E. Parkhurst and others, composing the election board of the town of Richland, and Lewis J. Macy, for a writ of mandamus. Denied.

Irving G. Hubbs and S. C. Huntington, for relator.
N. B. Smith, for defendant Macy.
B. E. Parkhurst, for the election board.

WRIGHT, J.   The defendant Lewis J. Macy was declared by the defendants the election board to have been duly elected supervisor. The relator was a candidate for said office, and urges that certain errors were committed by the election board in counting the ballots, and that a legal count thereof would result in the election of himself, the relator.   I will consider the issues respecting the ballots in dispute in the numerical and alphabetical order in which they are severally numbered or marked.

### Ballot No. 3.

The relator, Mr. Pierce, contends that this ballot, which the board rejected as void, should have been counted for him.   It has, in addition to a cross mark in the voting space opposite the name of the relator, a diagonal black pencil mark in the space occupied by his name, on the right side thereof.   Section 105 of the election law provides:

"* * * It shall not be lawful to make any mark upon an official ballot other than the cross (X) mark used for the purpose of voting, with a pencil having black lead, and that only in the circles or voting spaces to the left of the names of the candidates. * * * Any ballot upon which there shall be found any mark other than the cross (X) mark used for the purpose of voting, or a name or names written otherwise than as heretofore provided, * * * shall be wholly void and no vote thereon shall be counted."

The diagonal mark at the right of the name of the relator on this ballot was made in clear violation of the statute.   It bears the impress of deliberation.   It was made apparently for the purpose of identification.   There is no other reasonable explanation for its existence.   This ballot was therefore properly rejected.

### Ballot No. 5.

The defendant Macy claims that this ballot, which was rejected as void, should have been counted for him. In the voting circle above the Republican column of candidates it has an inner circle, and within that inner circle there was evidently made a cross mark, which the voter partially erased with a rubber or a sharp instrument. This inner circle and the erasure rendered the ballot void. Section 105 of the election law provides:

"It shall not be lawful * * * to erase any name or mark written thereon [on the ballot] by such elector."

This ballot was therefore properly rejected.

### Ballot No. 9.

The defendant Macy also claims that this ballot, which the board rejected as void, should have been counted for him. A cross mark had evidently been made in the voting space opposite the name of George Haggerty, the Democratic candidate for collector, and a cross mark had also evidently been made at the left of the name of Charles H. Burch, a Democratic candidate for constable, in the space occupied by the name, and both of said cross marks were erased by a rubber. These obliterations rendered the ballot void, and the board properly rejected it.

### Ballot No. 12.

The defendant Macy claims that this ballot, which was rejected by the board as void, should have been counted for him. The cross mark in the voting space opposite the name of George W. Ashman, one of the Republican candidates for constable, has been obliterated by heavy, broad, and somewhat oval pencil marks. This ballot was properly rejected.

### Ballot No. 16.

The relator contends that this ballot, which the board rejected as void, should have been counted for him. It has a cross mark in the voting space opposite the name of the Republican candidate for collector, and also a cross mark in the voting space opposite the name of the Democratic candidate for the same office, but the latter cross mark is erased or crossed off by having two pencil lines drawn nearly parallel and horizontally across it. It is evident that these parallel horizontal lines drawn across the voting cross mark were no part of the original cross mark, but were made with the deliberate intention of canceling or erasing it, with the view of voting for the opposite candidate. No clearer evidence of a deliberate cancellation or erasure on a ballot of a "mark written thereon by such elector" is needed, and it comes squarely within the condemnation of the statute. "Ballots which show erasures, cancellations, and obliterations, apparently made by the voter in attempting to correct his own errors, are invalid." People ex rel. Feeny v. Board of Canvassers (N. Y. App.) 50 N. E. 425. Judge O'Brien said in that case:

"These marks were apparently made by the voter in attempting to correct his own errors. After making the X mark in the circle, or in the voting

space, he would endeavor to erase it with a rubber, or some sharp instrument, or, in some cases, by striking the pencil through the mark so as to erase it."

Further on in the opinion the judge says:

"If the elector makes an error in marking his ballot, he may return it, and procure another, * * * but he cannot correct the error by erasing or defacing the marks, and thus confusing and distinguishing his ballot."

Ballot No. 16 was therefore properly rejected by the board.

### Ballot "A."

The relator contends that this ballot was erroneously counted for Macy, on the ground that the cross mark within the voting circle at the head of the Republican list of candidates was not made with a black lead pencil. The objection is unfounded. It was evidently made with a black lead pencil having a dull point. This appears beyond question upon examination under the microscope. This ballot was therefore properly counted.

### Ballot "B."

The relator urges that this ballot was erroneously counted for Macy, on the ground that the lines in the voting spaces opposite the names of the candidates F. Mason Calkins and Frank W. White do not cross each other, and therefore are not cross marks. Though at first glance the lines opposite the name of White appear not to cross each other, yet on a close observation it does appear that the lines do actually cross. This appears very plainly under the microscope. If the lines cross each other in the slightest degree, they form a cross mark. The same remarks (including the microscopic observations) are applicable to the cross mark opposite the name of Calkins. Though the horizontal line crossing the diagonal line is extremely faint, yet on close inspection with the naked eye it is discernible. The voter made the cross mark in the circle at the head of the Republican ticket, and then made cross marks opposite the name of each Republican candidate. He made the latter marks evidently in a hurry, and lightly, and some were made not very distinctly; but the required lines are there. This ballot was therefore properly counted.

### Ballot "C."

This ballot is objected to by the relator on the ground that in the Republican party voting circle a very short line, not much larger than a dot, appears close to the end of one of the lines forming a cross mark. This little, dot-like mark, evidently made accidentally while making the cross mark, is too trivial to render the ballot void. The Feeny Case, above mentioned, is an authority for holding that trifling marks, evidently made by accident, do not have the effect of violating the ballot.

### Ballot "D."

The defendant Macy claims that this ballot was improperly counted for Pierce. The cross mark in the Democratic party circle has a short third line running parallel with one of the projecting ends of one of the cross lines. Also in the voting space opposite the name of Hannibal Woodard, a candidate for justice of the peace, the cross

mark is not complete, being made of one straight line joined by a second line at right angles. The first objection is of a trivial character; and, as to the second objection, the Feeny Case is an authority for holding that such a mark does not invalidate the ballot (see ballot No. 104 of the Feeny Case). The board therefore properly counted this ballot.

### Ballot "E."

The defendant Macy objects to this ballot as having been improperly counted for Pierce. It has, in the Democratic party circle, a cross mark with a third line crossing it, thus making the cross mark composed of three lines, instead of two. This extra line, being evidently made as part of the cross mark, does not invalidate the ballot, and the board properly counted it.

### Ballot "H."

The defendant Macy claims that this ballot was improperly counted for Pierce, on the ground that the marks in the voting spaces opposite the names of Theodore Spencer and Jerome Perry are not proper cross marks. Neither of these objections is well founded. The board therefore properly counted this ballot.

### Ballot "I."

The defendant Macy claims this ballot was improperly counted for Pierce. In the voting space opposite the name of Calvin B. Burch a cross mark had been made which has been nearly obliterated by an erasure evidently made with rubber, and which gives to the whole voting space a black appearance. This renders the ballot void, and the board improperly counted it. It must, therefore, be rejected.

### Ballot "K."

The defendant Macy claims that this ballot was improperly counted for Pierce. In the voting circle at the head of the Republican ticket there appears, in addition to the cross mark, a small black mark, lightly made. It is of too trivial a character to be regarded as a violation of the statute. The board properly counted it.

### Ballots "L" and "X."

The relator objects to these ballots on the ground that a puncture is found at the end of one of the cross-mark lines in two voting spaces, which puncture in "L" is opposite the name of William H. Averill, and in "X" is opposite the name of Frank H. White. These punctures are very small, being evidently made accidentally by the point of a sharp lead pencil while making the cross marks. They are too trivial to invalidate the ballots, and the board properly counted them.

### Ballot "M."

This ballot is objected to by the relator. It is a straight Republican ballot, with a proper cross mark in the party circle. A straight diagonal line, however, appears in the voting space opposite the name of John Y. Mahaffy, the Democratic candidate for commissioner of highways, and this is the ground of the relator's objection to its

validity. Similar marks on ballots in the Feeny Case (Exhibit 52 and Exhibit 149) were held by the appellate division not to invalidate them. These exhibits appear in a schedule which, as conceded by the attorneys herein, was used before the court of appeals, and represents the marks on the disputed ballots, together with the decision on the validity of each ballot as made in that case by the appellate division of the Second department. No mention of any particular ballot, however, is made in the opinion of the appellate division. 23 App. Div. 201, 48 N. Y. Supp. 866. Though Exhibit 52 was held bad by the court of appeals, it was on a different ground, viz. that of erasure. Ballot No. 145 in the Feeny Case had in one of the voting spaces a straight line in addition to the cross mark, and separate from it. It was held that the straight line did not vitiate the ballot. See the above-mentioned schedule and decision of said appellate division. The voter of ballot "M" evidently made the first line of a cross mark, and then forgot to complete it.

In Whittam v. Zahorik, 91 Iowa, 23, 59 N. W. 57, the court says:

"It will not do to say that all ballots which bear marks not authorized by law should be rejected. All voters are not alike skillful in marking. Some are not accustomed to using a pen or pencil, and may place some slight mark on a ballot accidentally, or a cross mark first made may be clumsily retraced. It is evident that in such cases, and in others where the unauthorized mark is not of a character to be used readily for the purpose of identification, the ballot should be counted. But where the unauthorized marks are made deliberately, and may be used as a means of identification, the ballot should be rejected."

The accidental failure to complete a partly-made cross mark in the voting space, which was apparently made "for the purpose of voting," or any trivial marks made in the voting space or party circle in addition to the two lines necessary to form a cross mark, if those additional trivial marks are evidently made by accident or inadvertence, or lack of skill in the use of a pencil, do not vitiate a ballot. This ballot was, therefore, properly counted for Mr. Macy.

### Ballot "N."

This ballot is objected to by the relator on the ground that a cross mark appears in the voting spaces opposite the names of William Lamb and Charles H. Burch, who are opposing candidates for constable. Judge Gray, of the court of appeals, said in the Feeny Case as follows, applicable to this ballot:

"I do not think that the effect of the elector's action was to destroy the whole ballot, but that, under paragraph 1 of subdivision 2 of section 110 of the election law, the vote for the office particularly affected by these voting marks for opposing candidates could not be counted."

This ballot was, therefore, properly counted.

### Ballot "O."

This ballot was objected to by the relator on a ground similar to that made above as to ballot "M." It must be held valid for the reason assigned to that ballot, and it was, therefore, properly counted.

## Ballot "P."

This ballot is objected to by the relator on the ground that two cross marks appear in the voting space opposite the name of F. Mason Calkins, a candidate for inspector of election. Such cross marks appear, but the objection is not well founded. See Feeny Case, supra, wherein ballots similarly marked were held valid.

## Ballot "Q."

This ballot was improperly counted for Pierce. In one of the spaces for the writing of the name of a candidate for justice of the peace, in the blank column, appears a diagonal black line. This renders the ballot void. It was evidently made with deliberation, and for the purpose of identification. There is no other reasonable explanation for the existence of this mark. This ballot must be rejected.

## Ballot "R."

This ballot is objected to by the relator on the ground that the marks in the voting spaces opposite the names of Frank White and William H. Averill are not cross marks. The first objection is clearly unfounded, for a close observation shows that the lines cross each other. The second objection is also unfounded, since two lines are made on angles which, if the lines were visible as prolonged, would form a visible cross, but one of them runs into the broad outside ink border of the ballot before meeting the other line, and thus loses its identity in the printed border. The appearance of the lines and angles warrants the conclusion that a cross mark is made partly within and partly outside of the voting space. The board therefore properly counted this ballot.

## Ballot "S."

The defendant Macy claims that this ballot was improperly counted for Pierce, on the ground that in the voting space opposite the name of the candidate Pierce there is no cross mark. This objection is unfounded. It is apparent to the naked eye that the lines actually cross, and the microscope places the matter beyond question. The board therefore properly counted this ballot.

## Ballot "T."

This ballot is objected to by the relator on the ground that the mark in the voting space opposite the name of Benjamin D. Salisbury is not a proper cross mark. The objection is not well founded. A close observation with the naked eye shows that the lines cross, and form a proper cross mark. The microscope brings this fact out very clearly. This ballot was, therefore, properly counted.

## Ballot "U."

The defendant Macy claims that this ballot was erroneously counted for Pierce. A straight black line appears at the left of the name of the relator, Ward E. Pierce, within the space occupied by his name. The line has been partially erased, cutting it in two. This line and its

erasure render the ballot void, under the Feeny Case, and the board therefore counted it improperly. It must be rejected.

### Ballot "V."

The relator claims that this ballot, which was counted for Mr. Macy, should have been rejected as void. It is a straight Republican ticket except that the elector voted for Michael S. Kelly, one of the Democratic candidates for constable. The cross mark opposite his name is made by two diagonal lines which join at the top, forming an acute angle like that of the large letter A, and are crossed by a line nearly horizontal. One of the diagonal lines is wholly within the space occupied by the name, and the other lines are partly within the voting space and partly in the space occupied by the name, and they cross exactly on the printed line separating the said two spaces. If this character of a cross had been wholly within the voting space, it would have been valid without question. The fact that it is partly within the voting space and partly outside of it does not make it invalid. See the Feeny Case, supra, and Taylor v. Bleakley (Kan. Sup.) 39 Pac. 1045. The court, in last case cited, says:

"In my opinion, it [the cross mark] must be substantially where the statute says it shall be. It will not be valid to put it at the * * * right of the candidate's name, nor above it, nor below it, nor across its face. Yet I do not think it must be all within the square, but some portion of it must be. If it is all outside of the square, although only by a small distance, it cannot be counted."

Observation shows that a large proportion of the cross marks upon ballots are made partly within and partly outside the voting space. Great injustice would result if the latitude given in the above decision were denied the voter. "As to the form of the mark required by law," the court, in its opinion in the last case cited, says, "allowance must be made for the want of practice with a pen and pencil, and the carelessness or haste of the voter, or for poor sight, due to age, and to the trembling hand of enfeebled nerves." This ballot was therefore properly counted.

### Ballot "W."

This ballot was objected to by the relator. It is a straight Republican ticket except that the elector voted for Charles H. Burch, a Democratic candidate for constable. The lines forming the cross mark are partly within the voting space and partly within the space occupied by the name of the candidate, the precise point where the lines cross being a trifle within the latter space. This ballot falls within the reasoning of the last case cited, and must be held valid. A like mark was held valid by the appellate division in the Feeny Case, 48 N. Y. Supp. 866. Although it was held invalid by the court of appeals, it was on other grounds. The board therefore properly counted this ballot.

### Ballots designated "AA," "BB," "EE," "G."

These ballots were conceded by counsel for the relator on the argument to have been erroneously counted for him, for the reason that in "AA," "BB," "EE," the cross mark appears in the space occupied by the name of Ward E. Pierce, and "G" has an erasure of a cross

mark in the voting space opposite the name of John Y. Mahaffy. These ballots are illegal, and are rejected.

### Ballot "CC."

The relator claims that this ballot was erroneously counted for Macy, because the voting cross mark was made wholly outside of the voting space and wholly within the space occupied by the name of George Haggerty, the Democratic candidate for collector; and the same objection applies to the voting mark in the space occupied by the name of Charles H. Burch, a Democratic candidate for constable. This ballot must be rejected.

### Ballot "DD."

The relator claims that this ballot was erroneously counted for Macy, on the ground that a cross mark appears in the spaces occupied by the names of Charles H. Burch and William H. Hinman. The objections are valid, and this ballot must be rejected.

The above remarks dispose of all the objections which were raised to ballots, on the argument or by the briefs of counsel. All objections to the other ballots which are before me are therefore considered as waived.

The foregoing findings and conclusions lead to a reduction of seven votes from the count as made by the board of canvassers for the relator, and a reduction of two votes from that count for the defendant Macy. On the original count, Macy was declared elected. A recount would have only the effect of increasing his majority, and would be of no benefit to the relator. There were cast at this town election 859 ballots, of which 39 were void. Upon the same ratio, there would have been cast at the last state election over 52,000 void ballots. The primary object of an election law is faithfully and correctly to register the expression and will of the voters. This election law fails of that object to an unfortunate and remarkable degree. That the result of an election and the title to office should depend upon infinitesimal microscopic examinations and troublesome technicalities is an absurdity, which I hope the common sense of the voters of this state will not long endure. Radical amendments to the election law should be made by the next legislature, abolishing the objectionable technicalities which are apparent from the consideration of this case, and which, as experience has shown, are largely preventive of the proper expression and registration of the will and intention of the voter.

The application for a peremptory writ of mandamus for a recount is denied, and these proceedings are dismissed, with costs to the defendants against the relator.